ARTHUR L. PALMER, Respondent, v. SAINT LOUIS AND SAN FRANCISCO RAILROAD COMPANY, Appellant.

Springfield Court of Appeals, April 4, 1910.

1. **RAILROADS: Negligence: Exceeding Speed Limit Fixed by Ordinances.** The violation of a reasonable ordinance of a city regulating the speed of trains is negligence *per se*, but the fact that a train running in excess of the speed permitted by a city ordinance collided with an individual on the track does not necessarily mean that the company is liable for injuries caused by such collision.

2. ———: **Injuries to Traveler: Contributory Negligence: Humanitarian Doctrine.** Plaintiff left his place of business about noon to go home. His customary route included the railroad track a part of the way. As he came to the track, a passenger train was at the station and the engine thereto was on the crossing. He walked around the engine of the train and started down the track in front of it. Snow and ice were on the ground and on each side of the track it was slippery and dangerous to walk upon. The train started up and plaintiff ran on in front calculating that he could make the next street. *Held*, that the fact that he did not wait until the train passed but walked around the engine and proceeded down the track at the time and under

the circumstances was an act of negligence on his part. *Held* further, that notwithstanding plaintiff's negligence, the case, under other evidence, was properly one for the application of the humanitarian doctrine, and should be submitted to the jury on that theory.

3. ————: **Exceeding Speed Limit: Presumption: Instructions.** Plaintiff was injured by being struck by a train from the rear while he was walking down a track, and his cause of action was grounded on the negligence of defendant railroad in exceeding the speed limit fixed by an ordinance of the town. Plaintiff was a witness but did not testify concerning any calculations made by him based on the speed fixed by the ordinance. *Held*, that no presumption would be indulged in his favor, and that an instruction was erroneous which told the jury that the plaintiff had the right to presume and calculate unless the contrary was shown, that defendant would observe the ordinance and not run its train in excess of the speed limited thereby.

4. **EVIDENCE: Expert Testimony: Stopping of Train.** A question which submits to an expert witness the inquiry, in what distance can a train be stopped, running at a certain speed, is improper unless it embraces all of the facts in the particular case, which would include the number of cars in the train, whether it was going up or down grade, the appliances the train had, etc.

5. ————: **Presumption: Negligence: No Presumption Where Person Injured is Alive.** A presumption may be indulged in favor of a person who lost his life in the accident and what he knew and what he relied on died with him and cannot be shown; but no presumption arises in a case where the victim was not killed, but is alive, and can go upon the stand and fully disclose the facts upon which he relied.

6. **INSTRUCTIONS: Damages: Evidence Insufficient to Show Damages From Loss of Time.** In a suit for damages for personal injuries, the evidence is examined and held to be insufficient to support the instruction covering damages recoverable for the loss of time from plaintiff's business.

7. **RAILROADS: Negligence: Humanitarian Doctrine.** Where the evidence shows that for many years the inhabitants of a city walked down the defendant's railroad track to get from one street to another, and this had been done for so long and to such an extent that the defendant had no right to expect a clear track between these streets; *held*, that it was the duty of the engineer, or servants in charge of a train, to exercise ordinary care in looking for persons who might be engaged in passing over that portion of the track.

8. ———: ———: ———. The humanitarian doctrine proceeds upon the theory that the injured party was, in the first instance, guilty of negligence in placing himself in a position of peril, but that such negligence does not prevent a recovery if the servants of defendant operating the engine or cars could have seen him in such position of peril in time to have avoided the injury by the exercise of ordinary care,, and neglected to do so.

Appeal from Laclede Circuit Court.—*Hon. L. B. Woodside,* Judge.

REVERSED AND REMANDED.

*W. F. Evans, Edgar P. Mann* and *Joseph B. Todd* for appellant.

(1)   The court erred in allowing the witness, R. E. Wright, to testify as an expert to the time in which a passenger train could be stopped running at a specified rate of speed, without any hypothetical question having been submitted to him involving the facts in this particular case to which, of course, the inquiry was intended to apply.   Turner v. Harr, 114 Mo. 335; Senn v. Railway, 108 Mo. 142; Mammerberg v. Railway, 62 Mo. App. 563.   (2)   Under such circumstances, the violation of the speed ordinance by the defendant was not the proximate cause of the accident, but a mere incident thereto, and the speed limit ordinance was not admissible in evidence for any purpose.   Bragg v. Railway, 192 Mo. 352; Reno v. Railway, 180 Mo. 469; Moore v. Railroad, 176 Mo. 528.   (3)   Presumptions are never indulged in where the witness is alive and able to go upon the stand and testify.   Mockowick v. Railroad, 196 Mo. 571; Nixon v. Railroad, 141 Mo. 439; Green v. Railroad, 192 Mo. 142; Stotler v. Railroad, 204 Mo. 639; Moore v. Railroad, 176 Mo. 528; Lynch v. Railroad, 112 Mo. 434; Laun v. Railroad, 216 Mo. 563.   (4) Where there is no evidence of plaintiff's earning capacity before and after the accident upon which an estimate could be made, the question of such  damages

should not be submitted to the jury. Davidson v. Transit Co., 211 Mo. 346; Leech v. Railroad, 118 S. W. 510; Maston v. Mt. Vernon, 58 N. Y. 391; Sedgwick on Damages, sec. 181; Paquin v. Railroad, 90 Mo. App. 128. (5) The defendant was entitled to have submitted to the jury the question of plaintiff's contributory negligence. It was pleaded in defendant's answer; it was developed in plaintiff's own testimony, as outlined in the instruction, and this instruction should have been given. Reno v. Railroad, 180 Mo. 464; Green v. Railroad, 192 Mo. 142; Moore v. Railroad, 176 Mo. 528; Laun v. Railroad, 216 Mo. 563.

*I. W. Mayfield, D. O. Vernon* and *L. C. Mayfield* for respondent.

(1) The appellant's first contention that the court erred in allowing witness Wright to testify is not well taken. This evidence is responsive to the pleadings, and is invited by defendant's special answer. The authorities cited do not support his conclusions. Besides his objections to this evidence are too general. Clark v. Loan Co., 46 Mo. App. 248; Creighton v. Modern Woodmen, 90 Mo. App. 378; Randall v. Railroad, 102 Mo. App. 342. (2) Appellant's second assignment of error is likewise untenable. The evidence does not support his position, nor do the authorities cited uphold his contention. Stotler v. Railroad, 200 Mo. 135; Hutchinson v. Railroad, 161 Mo. 246; Bragg v. Railroad, 192 Mo. 353; Riska v. Union Depot Co., 180 Mo. 168; Powers v. Transit Co., 202 Mo. 267. (3) The court properly declared the law under the evidence in this case. Weller v. Railroad, 164 Mo. 180; Powers v. Transit Co., 202 Mo. 267; Eckhard v. Transit Co., 190 Mo. 593. (4) In the absence of other evidence, the unlawful rate of speed, if shown, will be presumed to be the cause of the injury. Schereth v. Railroad, 96 Mo. 515; Graney v. Railroad, 140 Mo. 89; Powers v. Transit Co., 202 Mo. 283.

GRAY, J.—This suit was instituted in the circuit court of Laclede county, to recover damages in the sum of $15,000 for personal injuries sustained by plaintiff through the alleged negligence of the defendant in running its train against plaintiff, while he was on the track of defendant.   The petition, after alleging that at the times complained of, defendant was a corporation and operating a railroad through the city of Lebanon, a city of the fourth class, stated:

"That on the 13th day of January, 1905, that he was traveling eastward on and along the defendant's railroad in the corporate limits of the said city, from where Jefferson avenue crosses the defendant's road to Washington avenue where defendant's road crosses same, each of said avenues being public crossings in the said city of Lebanon, Mo.

That a number of days prior to the 13th day of January, 1905, there had fallen a very heavy snow covered with sleet and ice, and that it had formed an embankment on each side of the defendant's roadbed between said named points, to-wit: Jefferson and Washington avenues, and by and on account of same it was extremely difficult to get off of said tracks between said named points in said city.

Plaintiff further represents that the defendant's said road between said Jefferson and Washington avenues, and for a long distance west of said avenues, is straight and level and that said roadbed between said points for many years prior to the said 13th day of January, 1905, had been used as a road and footpath by the public by the forbearance and tacit consent of the defendant, and that while he was thus walking on defendant's said railroad near said Washington avenue in said city, he was run against and struck by one of the defendant's locomotives and train of passenger cars which approached him from the rear while the same was being run, conducted and managed by the defendants, its agents and servants and by reason of

being so struck and run against, he was bruised, mangled and permanently injured for life..............

Plaintiff further avers that on the said 13th day of January, 1905, and long prior thereto there was duly created and in force in said city of Lebanon, Missouri, a certain ordinance providing that no engine or cars should be run in or through said city at a greater rate of speed than six miles per hour, and that the defendant negligently violated this ordinance in that, it did at said time negligently run said locomotive and passenger train at a much greater speed than six miles per hour, to-wit: about 30 or 40 miles per hour in said city and between said Jefferson and Washington avenues. That by such negligence, by and on the part of the defendant in so running its train that the same was the proximate cause and directly contributed to plaintiff's injury as herein set forth to-wit:

Said injuries consisted of bruises on and about the head, face and body and by and on account of same this plaintiff was paralyzed in one-half of his entire body, and his speech greatly impaired and he was made on account of said injuries entirely helpless and was ruined for life both in mind and body and has suffered and is still suffering agonizing pain even nigh unto death.

Plaintiff says at said time of his injury so received as herein set forth he was of the age of —— years old, was strong, active and healthy man in both mind and body and was in business in the said city of Lebanon, Mo., and earning about two thousand dollars ($2000) per annum, but since said injuries he is wholly unable to attend to his business or do any work of any kind whatever.

Plaintiff therefore says and avers that said injuries so received as herein set forth on the said 13th day of January, 1905, was due solely to the negligence, carelessness and wantonness of the defendant, its agents and servants in charge of, running, managing and ope-

rating said locomotive and passenger cars on said date, time and place, as herein set forth, to-wit:

First. Said servants' in charge of said engine and cars, saw or by the exercise of reasonable care and caution, could and should have seen, the plaintiff in time to have avoided said injury, and negligently failed to do so, and after seeing or being by the exercise of reasonable care and diligence unable to see the imminent danger and peril of the plaintiff, negligently failed to use the proper means and appliances to slow up or stop said engine and cars and by the exercise of reasonable care and caution could have avoided said injury, but did negligently, recklessly, carelessly and wantonly run the same upon and against this plaintiff which was the direct cause, and directly continued to cause and produce said injuries herein complained of.

Second. Defendant was further negligent in not ringing its bell or sounding its whistle or giving the plaintiff any warning of its approach and that it was its duty to so do in approaching said crossings but negligently failed to so ring its bell or give any warning of its approach in violation of the law as made and provided, which negligence directly contributed to and caused said injuries.

Third. Defendant was further negligent in violating the said city ordinance by running its said engine and cars in excess of the rate of speed in said city at the time and place herein set forth and that its negligence in not obeying said ordinance was the direct cause and directly contributed to said injuries.

Wherefore plaintiff avers and charges that each of said negligent acts by and on the part of the defendant as herein set forth was the proximate cause of, and each directly contributed to cause and produce said injuries as herein complained of. Wherefore plaintiff is damaged in the sum of fifteen thousand dollars ($15,000) for which he asks judgment with costs.

The answer was a general denial, and a plea of contributory negligence.

The cause was tried before the court and a jury, on the 6th day of February, 1908, resulting in a verdict for plaintiff in the sum of $5000, and judgment duly rendered thereon. The defendant in due time filed its motion for a new trial, which was by the court overruled, and defendant excepted and appealed to the Supreme Court, and the case was transferred by that court to this one.

By examining the petition, it will be learned that the negligence charged is, (1) carelessly and negligently running the train against plaintiff after defendant knew or by the exercise of the care required by law might have known, the perilous situation of plaintiff, (2) failure to ring the bell or sound the whistle, or give plaintiff any warning of the train's approach to a public crossing, and (3) running the train in excess of the speed limit fixed by the municipal ordinance. The instructions asked by and given for plaintiff, show that the first and second grounds of negligence were abandoned, and the case submitted on the negligence of excessive speed.

The fact that the train was running in violation of the provisions of the municipal ordinance is not denied, and therefore, it stands admitted that the defendant's train at the time of the alleged collision, was being negligently operated, as the law is now firmly established in this State that the violation of a reasonable ordinance regulating the speed of trains, is negligence *per se*. [Laun v. Railroad, 216 Mo. 1. c. 578, 116 S. W. 553.] But the fact that a train running in excess of the speed permitted by a city ordinance, collided with an individual on the track, does not necessarily mean that the company is liable for injuries caused by such collision. [Stotler v. Railroad, 204 Mo. 619, 103 S. W. 1; Green v. Railroad, 192 Mo. 131, 90 S. W. 805; Laun v. Railroad, 216 Mo. 1. c. 578, 116 S. W. 553.]

Speaking generally, the track of defendant runs east and west through the city of Lebanon. Just east of the depot is Jefferson avenue, and the first street east of Jefferson is Adams, and the second street·is Washington, and all of these streets at the time of the accident, and for a long time prior thereto, were public streets of the city, running north and south across the track of defendant. After leaving the depot, the track is a little downgrade toward the east, and after crossing Adams street, curves somewhat to the south. Commercial street is the principal business street in the city, and runs east and west parallel with the railroad north of the track a short block. The plaintiff was engaged in business on Commercial street, and lived on the south side of the track, and could go home by walking down Commercial street to Washington, and then south on Washington across the defendant's track.

The evidence shows that for some reason, for many years the inhabitants of the city walked down the defendant's track from Jefferson to Washington avenues, and this had been done for so long and to such an extent that the defendant had no right to expect a clear track between these streets.

On the 13th day of January, 1905, the plaintiff left his place of business about noon to go home, and was carrying a sack of quails. He claims that he went down Jefferson street to the railroad and there observed a passenger train of the defendant at the station and standing across Jefferson street. He knew that this was a regular train bound for St. Louis, and that it had just stopped at the station for the purpose of discharging and receiving passengers, and would soon leave and run down the track across Adams and Washington avenues. He walked around the engine and started east down the track in front of the train.

As the defendant claims the court erred in refusing a demurrer to the evidence at the close of plain-

tiff's case, we give the following from the plaintiff's testimony:

"Q. Do you know the time of day it was? A. At twelve o'clock as near as I can recollect.

"Q. Do you know what kind of a train it was that struck you, whether it was a passenger or freight? A. It was a passenger.

"Q. Where did you get on the railroad, if you got on the railroad at that time? A. The passenger train was standing on the track and I had to go around it in order to get by it and the snow was very deep and I kept on down the railroad.

"Q. Where was the train with reference to Jefferson avenue at the time you entered upon the track? A. It was standing still.

"Q. And now tell the jury, if you know, how came the train to hit you; was you standing still or moving? A. I was moving.

"Q. What calculations, if any, did you make with reference to getting to Washington avenue, where you was injured, and making the crossing? A. When I got about half way there the train started up and I thought I had plenty of time to make it; I was running and I was running when I heard the train start.

"Q. Do you know how the train was running when it hit you? A. It was running very fast.

"Q. Was it running in excess of six miles an hour? A. I should imagine it was running from twenty to thirty miles an hour.

"Q. At that time you was able to tend to your business, was you, prior to the injury? A. I have been, for about two years, not able to tend to my business.

"Q. At the time you received this injury had you been tending to your business? A. Yes, sir; I had been tending to it, in every detail.

"Q. About what was you earning, before you got

142 App—29

hurt, per annum? A. About three thousand dollars.

"Q. A year? A. Yes, sir.

"Q. Are you able, now, to dress yourself? A. No, sir.

"Q. Are you able to feed yourself? A. No, sir.

"Q. State to the jury if you have suffered and are still suffering from this injury? A. I have suffered a great deal until about two months ago.

"Q. Mr. Palmer, this was a passenger train? A. Yes, sir.

"Q. Going towards St. Louis? A. Yes, sir.

"Q. And you went in the same direction? A. Yes, sir.

"Q. You knew it would follow you? A. Yes, sir.

"Q. And you went around the engine and down the track? A. Yes, sir.

"Q. And when you got about half way to Washington you noticed it coming? A. Yes, sir.

"Q. Noticed it coming very fast? A. Yes, sir.

"Q. Coming at the rate of thirty or twenty miles an hour? A. Yes, sir; I think so.

"Q. Now it was in plain sight all the time? A. Yes, sir.

"Q. And had you been running all the time or did you start, then, to run? A. No, sir.

"Q. You started, then, to run? A. Yes, sir.

"Q. Had you got to Washington avenue when you were struck? A. No, sir.

"Q. Was you trying to get to Washington avenue? A. Yes, sir.

"Q. Now you say you was earning about three thousand dollars a year? A. Yes, sir.

"Q. That was running a store? A. Yes, sir.

"Q. The store is still being run? A. Yes, sir.

"Q. And it is still earning about the same amount of money? A. Not hardly."

The plaintiff was found lying unconscious near the track on Washington avenue, and the evidence was

sufficient to submit to the jury the question of serious injuries caused by the train striking him at that point. The evidence also sustains the allegation of the petition regarding the snow and ice on the sides of the, track, and one witness testified that had the plaintiff attempted to leave the track when he saw the train coming, he would have been in great danger of falling. The evidence shows but for the slippery condition, the plaintiff could have left the track at any time and let the train pass him.

The plaintiff called as a witness, R. E. Wright, who had been for eleven years a locomotive engineer, and asked him, "how soon a passenger train could be stopped that was running twenty to thirty miles per hour." Among the objections made to this questions, the defendant made the following: "That under the testimony in the case that the testimony has not been brought to the case in hand." The objection was overruled and the witness answered that "a train running at a speed of twenty miles an hour, with the appliances in good condition, could be stopped in about two hundred and fifty feet." The objection to this question should have been sustained. It entirely ignored all the facts of the particular case—the number of cars in the train, and whether the train was running up or down grade.

In Frye v. The Railroad, 200 Mo. l. c. 389, 98 S. W. 566, LAMM, Judge, said: "A mass of expert testimony was introduced as to the distance in which a train could be stopped that was going at this, that or the other rate. . . . . The ability to stop a train generally, that is, the distance in which it could be stopped, was wholly in the air. The concrete case, even if such question be pertinent at all, was in what distance a passenger train of the length of the one doing the injury, going against such a storm of snow, rain and wind as then prevailed, could be stopped with safety to the

train and its occupants, on a slight up-grade, equipped with the appliances that train had."

At the request of plaintiff and over the objections and exceptions of defendant, the court gave the jury the following instructions:

"1.   The court instructs the jury that if you find from the evidence that there was a city ordinance in said city of Lebanon, Mo., at said time when said in-. jury occurred, providing that no engine or cars should be run at a greater rate of speed than six miles per hour through said city, then and in that event the running of such engine and cars at a greater rate of speed than six miles per hour in said city would as a matter of law be negligence, and if you find from the evidence that the defendant, its agents and servants was running its said engine and cars on said date and between said points in excess of six miles per hour and struck and thereby injured plaintiff, and that running at such greater speed than six miles per hour, if you so find, was the proximate cause of, or directly contributed to said injury, then your verdict should be for the plaintiff, unless you further find that the plaintiff's own negligence hereafter explained, was the approximate cause of or directly contributed to said injury.

"2.   The court further instructs the jury, that when the plaintiff entered upon the defendant's track at said Jefferson avenue, if you find he did go upon same, had the right to presume and calculate, unless the contrary has been shown that the defendant would observe said city ordinance and not run its train in excess of said six miles per hour, and although you may find from the evidence that the plaintiff was negligent in going upon said track at said time and place, yet if he calculated and depended on the defendant running its said train between said points not to exceed six miles per hour, and if the evidence shows he would have reached said Washington avenue safely, had the defendant observed said ordinance, and if you find

from the evidence that the defendant struck the plaintiff with said engine or cars and injured him and if at said time defendant's agents and servants were not observing said ordinance and was running its said train in excess of said six miles per hour and that this was the proximate cause of, or directly contributed to said injury your verdict should be for the plaintiff, unless you further find that the plaintiff was negligent after he entered upon said track and discovered or by the reasonable care could have discovered, the defendant so running its train in violation of said ordinance, could have by the exercise of reasonable care and caution on his part, the time, place and condition of the track being considered, avoided said injury and that said negligence was the proximate cause of, or directly contributed to said injury.

"3. The court instructs the jury that if you find the issues for the plaintiff then in estimating his damages you may take into consideration all of the mental and physical pain and anguish suffered by him and all the future mental and physical pain and anguish, if any, that will result to him by and on account of said injury; also his loss of time from his business, if any, together with the value of said time, since the date of his injury, and if you find from the evidence that his injuries are permanent and lasting in their character and will in any way disable him from pursuing his occupation or trade, you should take these facts into consideration and estimate his time and value it at whatever amount the evidence shows the same was reasonably worth at the time of the injury, together with his age, and all other facts in evidence, and you should assess his damages at such sum as will reasonably compensate him for all the losses and suffering both past and future that have or will result from said injury, not to exceed the sum of fifteen (15) thousand dollars."

The appellant claims that the first and second instructions should not have been given, as the plaintiff was not entitled to recover on the alleged negligence of the defendant in operating its train at a speed in excess of the limits of the ordinance.

In determining this question the plaintiff is to be allowed every reasonable and favorable inference of fact deduced from the evidence, and hence, if there can be two views of his conduct entertained by fairminded men, one condemning and one exonerating him, he was entitled to the verdict of a jury. [Mockowik v. Railroad, 196 Mo. l. c. 567, 94 S. W. 256.]

Our courts have repeatedly held that a railroad track is a place of well-known danger, and no authority need be cited or quoted to affirm the legal proposition that there is an imperative duty resting upon persons to act with reason and common sense, and to look out for their own safety when about to cross or travel upon a railroad track, and where one in full possession of all his faculties, voluntarily passes from a place of safety to a place of danger in front of a railroad train that is about to pass over the track occupied by him, his conduct is negligent, and if he is injured on account thereof, he has no cause of action.

The undisputed facts in this case show that the plaintiff was a business man of mature years, and was well acquainted with all the surrounding circumstances; that is, he knew that the train was a regular noonday train on the road of the defendant, and that it had stopped at Lebanon only for the purpose of transacting business at the station, and that it would immediately pass over the track between the streets above mentioned. And he also knew that the snow and ice covered the ground so that there would likely be more difficulty in getting out of the way of an approaching train than there would be under ordinary circumstances. With all of his knowledge and information, he voluntarily passed around in front of an engine and

started down the track over which he knew that the engine would immediately pass.

It is claimed in his behalf that he had the right to presume that the train would not run in violation of the ordinance, and that if the speed of the train had been limited to the rate permitted by ordinance, he would have reached Washington street in time to have passed from the track to a point of safety. The evidence does not show these facts. We are not informed what information he had as to how long the train had been at the station, and, in fact might have been, so far as he was aware, just ready to move at the time he stepped in front of the engine, and if such had been the case and he knew the slippery condition of the surface on either side of the track, then as said by the courts, "He matched a race with death." And we may add, it was a race wherein the winner would receive no reward either in gold or glory. It was, under the evidence, a fact which plaintiff knew, that the train would move out of his way in a moment, and that he could then pass down the track without danger, and the fact that he did not wait, but passed around the engine and proceeded down the track at the time and under the circumstances, was an act of negligence on his part, and the jury should have been so instructed. The duty of persons in and about railroad tracks, is well stated by the Supreme Court in Laun v. Railroad, as follows: "Every intelligent person who has arrived at years of discretion is presumed to know that it is dangerous to be upon a railroad track when trains are passing to and fro, and when crossing one, he is expected to be vigilant and watchful of the approach of the locomotive.. The failure to exercise such vigilance is negligence *per se*. . . . . A railroad track of and within itself is a signal of danger, and one cannot carelessly attempt to cross the same without using some care for his own protection. The amount of care may be somewhat different under different surroundings,

but he must at least exercise the senses with which he is endowed for his own protection."

But it is earnestly urged by respondent in printed and oral argument, that he had the right to presume when he passed upon the railroad track in front of the engine, that the train would not move in excess of the speed prescribed by ordinance, and that his actions were governed by this presumption. It is true there are a class of cases where such presumptions may be and should be indulged, but they are controversies wherein the person, who, it is claimed, acted on the presumption, lost his life in the accident so that what he knew and what he relied on died with him and cannot be shown.

But in the late case of Mockowik v. Railroad, 196 Mo. 1. c. 571, our court rejects this presumption in cases wherein the victim was not killed but is alive, and can go upon the stand and fully disclose the facts upon which he relied.

In the case just referred to, the following language received the approval of all the judges of the court: "But will the law indulge presumptions where all parties to the actual occurrence are alive and can go upon the stand and the facts are fully disclosed? If plaintiff knew of the ordinances and relied on the fact that defendant was obeying their provisions and acted on that reliance, could he not have said so? Under such conditions, reliance would seem to be a fact susceptible of proof as are other facts, and should be proved by the best evidence of which the case would admit. He of all men knew what the facts were, and, having declined to speak, may he invoke the aid of friendly presumptions? . . . . To give place to presumptions, on the facts of this case, is but to play with shadows and reject substance." This case has been followed by the appellate courts of this State and stands at this time as the doctrine controlling us.

The second instruction given in behalf of plaintiff, declares the law contrary to these cases, as it tells the jury that the plaintiff had the right to presume and calculate, unless the contrary be shown, that the defendant would observe the ordinance and not run its train in excess of six miles an hour.

The third instruction, defining the measure of plaintiff's damages, told the jury it might take into consideration his loss of time from his business, together with the value of said time. The evidence as to the loss of earnings or time, came from the plaintiff himself. He testified on direct examination that he was earning about $3000 a year, running a store, and on cross-examination, in answer to the following question: "And it is still earning about the same amount of money," he answered: "Not hardly." This was all the evidence on that question, and it was certainly insufficient to support the instruction given relating thereto. [Davidson v. Transit Co., 211 Mo. 320, 109 S. W. 583.]

As this case must be reversed for the reasons above assigned, we are next to determine whether this shall be done without remanding it for new trial. In view of what we have said, the plaintiff is not entitled to recover on the alleged negligence of failure to give signals and the act of running the train in excess of the speed limit fixed by the municipal ordinance. This leaves but one theory upon which the plaintiff can be entitled to have his cause submitted to the jury, and that is, what is commonly known as the humanitarian doctrine.

The evidence shows that ever since the construction of the track of the defendant, it had been used by pedestrians, and that it was so used, must have been well known to the defendant, and no objections, either verbally or otherwise, had ever been made to such use. The right of way was not fenced and the track was open for free use as a footpath. Under these circumstances, the question of whether or not the engineer in charge

of the train was required to be on the lookout for plaintiff's presence on the track between Jefferson and Washington streets, was a question which should properly be submitted to the jury. [Cotner v. Railroad, 220 Mo. 284, 119 S. W. 610.]

We learn from the evidence that the servants of defendant in charge of the engine could see down the track from Jefferson street to Washington street, and if the jury should find that the use of the track between these streets by pedestrians was such that the defendant's servants did not have the right to expect a clear track, then it was their duty to exercise ordinary care in looking for persons who might be engaged in passing over that portion of defendant's track. [Hufft v. Railroad, 222 Mo. 287.]

The humanitarian doctrine proceeds upon the theory that the injured party was, in the first instance, guilty of negligence in placing himself in a position of peril, but that such negligence does not prevent a recovery if the servants of defendant operating the engine or cars, could have seen him in such position of peril in time to have avoided the injury by the exercise of ordinary care, and neglected to do so. And where persons are upon the railroad track in plain view of those operating the engine apparently unmindful of the approach of such engine, or where there is something in the conduct of a person at a point where the train men are required to keep a lookout, showing that he does not realize the danger, or is in such condition as not to appreciate it, then the humanitarian doctrine is applicable.

If this were a crossing case and the plaintiff looked up and saw the engine approaching the crossing, and then walked upon the track in front of the engine, the humanitarian doctrine would not apply. [Sites v. Knott, 197 Mo. 684, 96 S. W. 206.] But in this case the plaintiff was walking down the track with his back toward the approaching engine, but he saw it coming

and attempted to flee, according to his testimony, to a place of safety, and if this is true and his conduct was such that the servants in charge of the engine were led to believe that he was not going to get off the track, but was running down the track trying to reach Washington street, and that by the exercise of ordinary care they could have slackened or stopped the train in time to have avoided collision, and that the same could have been done without probability of danger or injury to themselves or the passengers on the train, then it was their duty to have done so.

In submitting this question, the condition of the track on either side of the road should be taken into consideration. The plaintiff knew the engine was coming, and those in charge of the train had a right to presume that he would get off the track and let the train pass, unless on account of the condition of the ground on either side of the track, or from his conduct, they had reason to believe he was not going to do so, and until they were so advised, they were not guilty of negligence in not stopping the train. [Sites v. Knott, supra.]

The premises considered, we are of the opinion that the plaintiff is entitled to have the issues submitted on the humanitarian doctrine, and for this reason, the judgment will be reversed and remanded.

*Cox, J.,* concurs. *Nixon, P. J.,* not sitting.